**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| KAROLYN JOHNSON-LOUDERMILK,<br><br>        Plaintiff,<br><br>  vs.<br><br>PLAYCORE WISCONSIN, INC., a<br>Corporation doing business as<br>PLAYCORE and as GAMETIME;<br>NATIONAL RECREATION AND PARK<br>ASSOCIATION, a corporation; and<br>RENO/SPARKS CONVENTION<br>CENTER,<br><br>        Defendants.<br><br>PLAYCORE WISCONSIN, INC., a<br>corporation doing business as<br>PLAYCORE and as GAMETIME,<br><br>        Third-Party Plaintiff,<br><br>  vs.<br><br>ENVIRONMENTAL MOLDING<br>CONCEPTS, LLC,<br><br>        Third-Party Defendant. | 3:06-CV-0044-RAM<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Before the court is Third-Party Defendant Environmental Molding Concepts, LLC's (EMC) motion for summary judgment regarding Third-Party Plaintiff Playcore Wisconsin, Inc. dba Playcore and as GameTime's (GameTime) express indemnity/breach of contract claim (Doc. #139 and Doc. #141 (supplement))[1]; GameTime's cross-motion for summary judgment regarding breach of the duty to defend (Doc. #143 and Doc. #147 (supplement)); and EMC's

---

[1] Refers to the court's docket number.

1  motion for summary judgment regarding its contribution claim against GameTime (Doc. #151).
2  GameTime has opposed both of EMC's motions. (Doc. #143, Doc. #147 (supplement), and
3  Doc. #156.) EMC has replied (Doc. #149 and Doc. #157). EMC has opposed GameTime's cross-
4  motion (Doc. #150) and GameTime has replied (Doc. #155).

Having considered the papers and the arguments presented therein, and with good cause appearing, the court: (1) grants EMC's motion regarding GameTime's express indemnity/breach of contract claim; (2) grants GameTime's cross-motion regarding breach of the duty to defend; and (3) grants EMC's motion regarding its contribution cross-claim against GameTime.

## I. BACKGROUND

This action arises from Plaintiff Karolyn Johnson-Loudermilk's (Plaintiff) slip and fall accident at the Reno-Sparks Convention Center on October 13th, 2004, while attending the National Recreation and Park Association trade show. (Pl.'s Compl. (Doc. #1).) Plaintiff allegedly fell and sustained injuries while stepping off a playground mat composed of multiple interlocking rubber tiles that were part of Defendant/Third-Party Plaintiff Playcore Wisconsin, Inc. dba Playcore and as GameTime's (GameTime) exhibit space. (*Id.*) Plaintiff filed suit on or about September 6, 2005 in the Northern District of California (Doc. # 1) and venue was subsequently transferred to the District of Nevada (Doc. # 13 and Doc. # 14).

Third Party-Defendant Environmental Molding Concepts, LLC (EMC) was the manufacturer of the rubber playground tiles. (EMC's Mot. for Summ. J. (Doc. #139) 4.)[2] GameTime and EMC entered into an agreement (Letter Agreement) on or about December 4, 2001, whereby GameTime agreed to purchase rubber playground tiles from EMC. (*Id.* at Ex. 2, Ex. 2-A and Doc. #143 at 3-4, Ex. A.) The Letter Agreement provides in relevant part:

> EMC agrees to indemnify and hold GameTime harmless from and against any loss, injury, damage or claim resulting from or attributable to the use, operation or misuse of, or contact with, a EMC product, including, without limitation, a

---

[2] Unless otherwise indicated, the facts are taken primarily from the motions for summary judgment, opposition and reply documents, and exhibits thereto.

2

> claim based on any alleged defect in the EMC product or in the design or manufacture thereof (individually, a "Claim" and collectively, the "Claims"), and EMC further agrees, at its own cost and risk to undertake the defense of any such Claims brought against GameTime. Notwithstanding the fact that EMC is defending GameTime in any Claim, GameTime shall have the right, at its expense, to participate in the defense of any Claim and shall be kept appraised by EMC of all developments in connection with the defense of any Claim. Without GameTime's prior written agreement, EMC shall not settle or compromise any Claim under terms that would impose any liability on GameTime.
>
> …
>
> EMC shall, at its expense, maintain liability insurance coverage (including coverage for liability resulting from products manufactured or sold), on an occurrence basis, with minimum general liability limits of not less than $1,000,000 per occurrence and with a self insured retention level of not more than $5,000 per occurrence. Such insurance shall be placed with an insurance carrier which has an A.M. Best rating of "A" or better. Such policy shall name GameTime as an additional insured and loss payee and contain a broad form vendor endorsement covering GameTime's sales representatives. All such insurance shall provide for 30 days prior written notice to GameTime of cancellation or of material change with respect to coverage, deductibles, limits, conditions or exclusions and all such insurance shall be primary without right of contribution. Upon GameTime's reasonable request to EMC, from time to time, EMC shall provide evidence of compliance with this paragraph.

(*Id.*) The agreement was drafted by or on behalf of GameTime and submitted to EMC on GameTime letterhead. (*Id.*)

EMC has a "sister" company, BAS Recycling. (Doc. #139 at 5 and Doc. #143 at 3-4.) BAS Recycling procured a policy of liability insurance from ACE Property and Casualty Insurance Company (ACE), Policy I.D. D35976681 (Policy), with an effective date of October 1, 2004 and an expiration date of October 1, 2005. (Doc. #139 at 5, Ex. 2, Ex. 2-C and Doc. #143 at 4.)[3] The Policy contains an endorsement entitled "Additional Insured-Where Required Under Contract or Agreement." (Doc. #139 at 5-6, Ex. 2, Ex. 2-C and Doc. #143 at 5.)

On or about March 2, 2007, GameTime notified EMC of Plaintiff's complaint and tendered its defense to EMC. (Doc. #143 at 5, Ex. B.) GameTime also made a request to ACE for a determination as to coverage and defense costs related to the Policy. (*Id.* at 5, Ex. C.)

---

[3] On April 8, 2010, EMC filed a supplement (Doc. #141) to its motion for summary judgment (Doc. #139) and produced a "Declarations Update Endorsement" with an effective date of October 1, 2004 and pertaining to the Policy and identifying EMC as an "extended named insured." (Doc. #141 at 3, Ex. 1.)

1  EMC declined to provide GameTime with a defense. (Doc. #149 Ex. 8.)

2  GameTime filed a third-party complaint against EMC for indemnity and contribution on May 1, 2007. (Doc. #36.) GameTime filed a motion for summary judgment on its contractual indemnity claim against EMC. (Doc. #105.) The court denied GameTime's motion for summary judgment finding that GameTime's conduct in arranging the playground tiles caused Plaintiff's fall and GameTime's third-party contractual indemnity claim should fail as a matter of law. (Doc. #129 at 6-7, 9.)

The parties were able to settle Plaintiff's claim for relief and pursuant to the terms of the settlement agreement EMC was to pay Plaintiff the sum of $95,000.00 in exchange for a release and dismissal of Plaintiff's claims with prejudice. (Doc. #139 at 4, Ex. 1, Ex. 1-A, Ex. 1-B and Doc. #143 at 5-6.) Pursuant to the settlement agreement, GameTime's third-party complaint against EMC would remain on file. (*Id.*) EMC was allowed to file an amended answer to GameTime's third-party complaint as well as a counterclaim for contribution to recoup all or part of the $95,000.00 which EMC paid to resolve Plaintiff's claims. (Doc. #134 at 2, Ex. 1.) In addition, GameTime was permitted to file an amended third-party complaint to more fully describe its contractual indemnity theory to the extent based on a theory of failure to procure insurance. (*Id.* at 2, Ex. 2 and Doc. #135.) With respect to EMC's contribution claim, the parties stipulated that it is timely and not barred by NRS 17.285(4). (Doc. #134 at 3, Ex. 1.) GameTime also stipulated that the $95,000.00 settlement payment made to Plaintiff is reasonable in amount. (*Id.*)

A bench trial to address the factual evidence of the insurance and contribution issues set to commence on March 22, 2010 was vacated in light of the filing of the instant motions.

## II.  DISCUSSION

A.  **LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor

of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," (*Id*. at 255) if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

**B.    APPLICABLE LAW**

A federal court sitting in diversity must apply the substantive law of the forum state in which it resides. *Capitol Indem. Corp. v. Blazer*, 51 F.Supp.2d 1080, 1084 (D. Nev. 1999)

6

(citation omitted). Accordingly, the court must construe the substantive issues in this case as a Nevada state court would if presented with the same questions. *Id.* (citation omitted). In the absence of Nevada Supreme Court precedent, this court "must make a reasonable determination of the result [it] would reach if it were deciding the case." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n. 7 (9th Cir. 2000) (quoting *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993)).

## C. FAILURE TO PROCURE LIABILITY INSURANCE FOR THE BENEFIT OF GAMETIME PURSUANT TO THE TERMS OF THE LETTER AGREEMENT

EMC moves for partial summary judgment on GameTime's express indemnity/breach of contract claim which alleges that EMC failed to procure liability insurance for the benefit of GameTime pursuant to the terms of the Letter Agreement. (Doc. #139 at 3.) EMC argues that it, or its sister company BAS Recycling, did procure a policy of liability insurance fulfilling the requirements of the Letter Agreement. (*Id.* at 6-9.) In its supplement (Doc. #141), EMC produced recently discovered documentation, including a Declaration Update Endorsement (Endorsement), identifying EMC as an "extended named insured" on the Policy effective October 1, 2004. (*Id.* at Ex. 1.)

GameTime claims that EMC breached the Letter Agreement by failing to procure insurance pursuant to the terms of the Letter Agreement. (Doc. #143 at 2-3.) First, GameTime argues that EMC failed to procure a policy of insurance where it was a named insured and this resulted in ACE's denial of coverage or failure to provide a coverage determination to GameTime. (*Id.* at 2-3, 7-12.) Second, GameTime argues that EMC failed to procure a policy of insurance containing a broad form vendor endorsement covering GameTime's sales representatives. (*Id.* at 2-3, 12-13.)

First, the court will address GameTime's claim that EMC breached the Letter Agreement by failing to procure a broad form vendor endorsement. While EMC admits that it did not obtain the required broad form vendor endorsement (Doc. #139 at 8), there is no evidence before the court demonstrating that GameTime has suffered any damage as a result of EMC's

7

failure to obtain an insurance policy with a broad form vendor endorsement covering GameTime's sales representatives. Given the absence of any evidence to support the damages element of GameTime's claim, the court finds that GameTime's claim that EMC breached the Letter Agreement by failing to procure an insurance policy containing a broad form vendor endorsement must fail.

With respect to GameTime's claim that EMC breached the Letter Agreement by failing to procure liability insurance listing EMC as a named insured, GameTime makes several arguments in support of its opposition to EMC's motion for summary judgment. First, GameTime argues that EMC is precluded from asserting itself as a named insured pursuant to the Endorsement because of the "After Acquired Liability Doctrine." (Doc. #143 at 7-9.) GameTime's argument is misplaced and the authority cited in support of its position, *A.C. Label Co. v. Transamerica Ins. Co.*, 48 Cal.App.4th 1188 (1996), is not applicable.

Next, GameTime argues that a dispute of material fact exists as to whether EMC was a named insured at the time GameTime tendered its defense to EMC and as to whether EMC's breach was a proximate cause of GameTime's damages. (Doc. #143 at 10-12.)

The parties agree that in order to prove that EMC breached the Letter Agreement, GameTime must establish: (1) the existence of a contract; (2) GameTime's performance or excuse for non-performance; (3) EMC's breach; and (4) resulting damages. (Doc. #139 at 7 and Doc. #143 at 19.)

The parties do not dispute the following facts:
(1) The Letter Agreement contains a provision requiring that EMC maintain liability insurance coverage naming GameTime as an additional insured (Doc. # 139 Ex. 2, Ex. 2-A and Doc. # 143 Ex. A);
(2) The Policy was procured by EMC's sister company, BAS Recycling, with an effective date of October 1, 2004 and an expiration date of October 1, 2005 (Doc. #139 at 5 and Doc. # 143 at 4);

8

  (3) The Policy contains an additional insured endorsement that provides:

> Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of your operations or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of: 1. The coverage and/or limits of this policy, or 2. The coverage and/or limits required by said contract or agreement. (Doc. # 139 Ex. 2-B and Doc. # 143 at 5.)

EMC produced for the first time, in the supplement to its motion for summary judgment (Doc. #141), recently discovered documentation including an Endorsement identifying EMC as a named insured to the Policy with an effective date of October 1, 2004. (Doc. #141 at 3, Ex. 1.) While GameTime comments that the document was belatedly produced (Doc. #143 at 3, 7, 14), it did not file an objection or move to strike the document and did not question its authenticity. The Endorsement clearly establishes that effective October 1, 2004, EMC was a named insured under the Policy. (Doc. # 141 Ex. 1.) EMC has submitted this affirmative evidence which disproves an essential element of GameTime's breach of contract claim-that EMC breached the Letter Agreement by failing to procure a liability insurance policy in its own name. GameTime has not produced evidence to controvert the Endorsement or to create a genuine dispute as to whether EMC was a named insured on the Policy. There is no question that the Endorsement identifies EMC as a named insured at the time GameTime tendered its defense.

In the supplement to its opposition, GameTime argues that documents it just obtained pursuant to subpoena support its opposition to EMC's motion for summary judgment. (Doc. #147 Ex. 1-3.) These documents do not change the fact that EMC has produced evidence negating an essential element of GameTime's claim. Moreover, this additional documentation does not establish that GameTime suffered any damage as a result of EMC's failure to obtain a liability insurance policy with a broad form vendors endorsement.

/ / /

9

Finally, GameTime argues that the court should delay ruling on this motion to allow discovery to continue regarding the Policy and claims adjustment. This argument is not well taken. Preliminarily, ACE's coverage determination or failure to provide a coverage determination is not an issue in this matter. GameTime has had ample time to conduct discovery regarding insurance issues. Plaintiff filed her complaint on September 6, 2005. (Doc. # 1.) GameTime admits that it notified EMC of the complaint and tendered its defense on or about March 2, 2007, that it made a request to ACE for a coverage determination on or about August 22, 2007, and received no response. (Doc. #143 at 5.) GameTime also admits that EMC declined its tender of defense on or about May 24, 2007. (*Id.* at 17.) It is clear that GameTime was aware of potential insurance issues as early as 2007, yet it waited until the eve of trial to subpoena documents relating to these insurance issues. (*Id.* at 14-15.) The discovery cutoff of January 31, 2008 (Doc. #57 at 4) has long since passed and no party sought an extension. GameTime did not file a motion to compel discovery responses or alert the court to the failure of a non-party to comply with a subpoena. GameTime offers no plausible excuse for failing to subpoena these documents or conduct other discovery regarding these issues prior to this time.

In the absence of a genuine dispute as to any material fact, the court finds that GameTime's third-party claim for express indemnity/breach of contract for failure to procure a liability insurance policy pursuant to the terms of the Letter Agreement should fail as a matter of law.

**D.    THE DUTY TO DEFEND**

GameTime seeks summary judgment on its claim that EMC breached its duty to defend GameTime under the terms of the Letter Agreement. (Doc. #143.) GameTime argues that the duty to defend analysis in the insurance context should apply to a non-insurance agreement and cites the California Supreme Court decision *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal.4th 541 (2008) as persuasive authority in support of its position. (*Id.* at 19-22.) EMC argues that the duty to defend and the duty to indemnify are co-extensive in a non-insurance

10

context and that it has no duty to defend in the absence of a duty to indemnify. (Doc. #150 at 3, 7.) EMC contends GameTime's reliance on the *Crawford* decision is misplaced and takes the position that the Nevada Supreme Court would not adopt the reasoning of *Crawford*. (*Id*. at 9.)

The parties do not dispute that the Letter Agreement contains the following provision:

> "EMC agrees to indemnify and hold GameTime harmless from and against any loss, injury, damage or claim resulting from or attributable to the use, operation or misuse of, or contact with, a EMC product, including, without limitation, a claim based on any alleged defect in the EMC product or in the design or manufacture thereof (individually, a "Claim" and collectively, the "Claims"), *and EMC further agrees, at its own cost and risk to undertake the defense of any such Claims brought against GameTime…*"

(Doc. #143 at 16; Doc. #150 at 3 (emphasis added).) EMC's duty to defend is clear from the plain language of the Letter Agreement. The court's inquiry is therefore focused on whether EMC was required to provide a defense to GameTime under the circumstances.

The Nevada Supreme Court has commented on the duty to defend in the insurance context and recognizes that the duty to defend is broader than the duty to indemnify. *United National Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 686 (2004) (citation omitted). "An insurer…bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *Id.* (citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966) ("Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources." *Id.* at 176-77)). The duty to defend is not absolute and whether or not the duty to defend is owed is determined by comparing the allegations of the complaint with the terms of the insurance contract. *Id.* (citation omitted).

While the Nevada Supreme Court has addressed the duty to defend in the insurance context, it has not spoken on the issue in the non-insurance context. In *Crawford*, the California Supreme Court found that the duty to defend analysis in the insurance context was generally applicable to a non-insurance agreement. *Crawford*, 44 Cal.4th at 552-54. While EMC argues that the California Supreme Court's opinion is not persuasive on this issue and

that the Nevada Supreme Court would not adopt this reasoning, it provides no relevant authority to support its position. The court finds *Crawford* persuasive and will apply the general duty to defend analysis to this non-insurance subcontract agreement.

The California Supreme Court recognized that whether the contract at issue includes a duty to defend, and if so, whether the underlying suit as to which a defense is sought falls within the scope of the contractual duty to defend is a question for the court. *Crawford*, 44 Cal.4th at 565, fn. 12 ("the court may resolve legal issues then ripe for adjudication, such as whether any of the contracts at issue include a duty to defend, and, if so, whether the underlying suit or proceeding as to which a defense is sought falls within the scope of any of the parties' contractual duty to defend..."). Therefore, the question of whether Plaintiff's complaint falls within the scope of EMC's contractual duty to defend is a question of law for the court to resolve by comparing the facts alleged in Plaintiff's complaint and the terms of the Letter Agreement.

As a preliminary matter, EMC admits that it received and denied GameTime's tender of its defense. (Doc. #150 at 2 and Doc. #143 Ex. B.) Plaintiff's complaint (Doc. #1) alleges that she suffered bodily injuries to her knees on or about October 13, 2004 while visiting the trade show exhibit space of GameTime which consisted in part of its playground surface coverings placed on top of the convention center concrete flooring. (*Id.* at 2-3.) Plaintiff alleges that the playground surface coverings were installed in a negligent and dangerous manner and without safe or adequate cautions or warnings, which caused Plaintiff to trip and fall. (*Id.*)

EMC argues that there is no duty to defend because: (1) Plaintiff's allegations are only related to GameTime's negligence; (2) this court already ruled that EMC is not required to indemnify GameTime; and (3) Plaintiff's own liability expert testified that it was not his opinion that the playground tiles were unreasonably designed or suffer from a design flaw with respect to their intended use. (Doc. #150 at 3-4.) However, the duty to defend is broader than the duty to indemnify. *United National Ins. Co.*, 120 Nev. at 686. Plaintiff's allegations suggest that there was a potential for liability on the part of EMC at the time GameTime tendered its

12

defense. In fact, EMC admits that Plaintiff's expert testified that a color border for the playground tiles "may or may not have" provided an adequate warning of the sloped surface and the resulting tripping hazard. *(Id.* at 4-5.) This establishes that there was at least a potential that EMC would have to indemnify GameTime under the Letter Agreement for conduct other than GameTime's own negligence. While this court may have ultimately found that Plaintiff's injuries did not result from a design flaw, at the time it tendered its defense, GameTime had a potential indemnity claim against EMC resulting from the allegations of the Complaint. Therefore, EMC did have a duty to defend GameTime and summary judgment is appropriate on this issue.

In the insurance context, the duty to defend generally arises upon the tender of a potentially covered claim and continues until the litigation is concluded or until the insurer makes a showing that there is no potential for coverage. *United National Ins. Co.,* 120 Nev. at 686; *see also Travelers Cas. and Sur. Co v. Employers Ins. Of Wausau*, 130 Cal.App.4th 99, 109 (2005); *GGIS Ins. Services, Inc. v. Superior Court*, 168 Cal.App.4th 1493 (2008), *review denied*, (Feb. 18, 2009). Here, it is undisputed that GameTime tendered its defense to EMC on March 2, 2007. (Doc. #143 Ex. B.) The court made a finding in its Memorandum Decision and Order dated September 1, 2009, that it was GameTime's conduct in arranging the playground tiles that caused Plaintiff's fall (Doc. #129 at 6-7) and that GameTime's third-party contractual indemnity claim should fail as a matter of law (*Id.* at 9). Therefore, the court finds that EMC's duty to defend GameTime arose on March 2, 2007 and continued through September 1, 2009.

E.   **EMC'S CONTRIBUTION CLAIM**

EMC moves for summary judgment as to its contribution cross-claim against GameTime. (Doc. #151 at 2.) EMC argues that the court's ruling that it was GameTime's conduct in arranging the playground tiles that caused Plaintiff's fall and that GameTime's indemnity claim failed as a matter of law entitles EMC to judgment against GameTime on its contribution claim in the amount of $95,000.00, pursuant to NRS 17.225. (*Id.* at 5-6.) This

is the amount paid to Plaintiff in settlement of her claims which EMC contends is in excess of its equitable share of the common liability to Plaintiff.  (*Id.*)

GameTime argues that it was not the court's finding that GameTime's use of EMC's product was the sole cause of Plaintiff's alleged injuries, and that a dispute of material fact exists as to whether EMC was partially responsible for Plaintiff's fall and injuries. (Doc. #156 at 3-9.)

NRS 17.225 provides:

> 1. Except as otherwise provided in this section and NRS 17.235 to 17.305, inclusive, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
>
> 2. The right of contribution exists only in favor of a tortfeasor who has paid more than his or her equitable share of the common liability, and the tortfeasor's total recovery is limited to the amount paid by the tortfeasor in excess of his or her equitable share.  No tortfeasor is compelled to make contribution beyond his or her own equitable share of the entire liability.
>
> 3. A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in  excess of what was reasonable.

The court made a finding in connection with GameTime's motion for summary judgment on its contractual indemnity claim against EMC (Doc. #105) that it was GameTime's conduct in arranging the playground tiles that caused Plaintiff's fall (Doc. #129 at 6-7).  The court also found that GameTime's indemnity claim should fail as a matter of law because the indemnity provision did not explicitly provide that EMC would indemnify GameTime for GameTime's own negligence.  *(Id.* at 9.)  EMC's argument that the court did not find that GameTime's conduct was the *sole* cause of Plaintiff's fall (Doc. #156 at 5-9) is not well taken.  The court's determination that GameTime's indemnity claim failed as a matter of law necessitated a conclusion that GameTime's conduct was the sole cause of Plaintiff's fall.  If the court found otherwise, (*e.g.*, that EMC contributed to Plaintiff's fall) the indemnity claim would

14

have survived. Moreover, the court specifically considered and rejected GameTime's arguments and evidence presented by GameTime that a design defect contributed to Plaintiff's fall in denying summary judgment on the express indemnity claim. (Doc. #129.)

It is undisputed that the $95,000.00 payment made to Plaintiff in settlement of her claims was made by EMC (or by EMC's insurance carrier on EMC's behalf) and not by GameTime. (Doc. #151 Ex. 1-A, 1-B and Doc. # 156 at 3.) GameTime and EMC stipulated that the $95,000.00 payment to Plaintiff was reasonable in amount and that EMC's contribution claim was not procedurally barred. (Doc. #134.) Since Plaintiff's fall was a result of GameTime's conduct, EMC is entitled to contribution as a matter of law in the amount of $95,000.00- the amount it paid in settlement of Plaintiff's claims, which is in excess of EMC's equitable share of common liability.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Third-Party Defendant EMC's Motion for Summary Judgment (Doc. #139) is **GRANTED**.

**IT IS FURTHER ORDERED** that Third-Party Plaintiff GameTime's Counter-Motion for Summary Judgment (Doc. #143) is **GRANTED**.

**IT IS FURTHER ORDERED** that Third-Party Defendant EMC's Motion for Summary Judgment (Doc. #151) is **GRANTED**.

DATED: September 22, 2010.

_____
UNITED STATES MAGISTRATE JUDGE